**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**Dallas Division**

| | | |
|---|---|---|
| **ROBERT CARUSO,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | **Case No. 3:20-cv-547** |
| | § | |
| | § | |
| **MERZ NORTH AMERICA, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW, Robert Caruso ("Caruso" or "Plaintiff") and files this First Amended Complaint against Merz North America, Inc. ("Merz," "Company" or "Defendant") and would respectfully show the Court the following:

### I.    THE PARTIES

1.    Plaintiff Robert Caruso is an individual who resides in Dallas County, Texas.

2.    Defendant is a foreign corporation doing business in the State of Texas.

### II.    JURISDICTION

3.    The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and § 1332 because federal causes of action are plead under the Age Discrimination in Employment Act, as amended (hereinafter "ADEA") and because there is diversity of citizenship between the parties and the amount in controversy is in excess of **$75,000.00**.

### III.    VENUE

4.    Venue of this action is governed by 28 U.S.C. § 1391 and is proper in the Northern District of Texas because Plaintiff was employed by the Defendant in this District and this Division and the incidents giving rise to this lawsuit occurred in this District and this Division.

5.      This lawsuit was originally filed in the County Court at Law No. 4 of Dallas County, Texas as Cause No. CC-20-00597-D. On March 3, 2020, Defendant filed a Notice of Removal [Doc. 1] to this Court.

## IV.    SERVICE

6.      Defendant Merz has already been served.

## V.    DEFENDANT'S DISCRIMINATORY AND RETALIATORY TREATMENT OF PLAINTIFF

7.      Caruso began his employment with the Company in 2011. His performance and the results he achieved were always exemplary. By way of example only, Caruso was awarded six President's Club awards in a row and was consistently among the top one or two sales representatives in the Company.

8.      Caruso's previous manager said of Plaintiff in his 2015-2016 annual performance appraisal:

> [His] President Club wins are indicative of his ability to adapt to differing yearly challenges, overcome them and earn the highest recognition within the Merz sales organization…Rob demonstrates an uncompromising commitment to his customers. He has earnestly developed customer relationships that go well beyond a business connection. Rob has fostered trusted and loyal relationships which he is able to leverage to gain higher levels of interest from physicians and to accelerate the evaluation and utilization of Xeomin…Rob is well liked and respected by his colleagues. His consistent high performance obviously commands a level of respect and admiration, however, it's Rob's humility and willingness to help that has endeared him to his peers…Rob has built his business based on trust and integrity.

9.      But, following the arrival of the new Company CEO, in March of 2017, the Company engaged in a concerted effort to get rid of older employees in its sales force, including particularly those who raised compliance issues.

10.     Meanwhile, Company executives overlooked the misconduct of Plaintiff's managers, Justin Sumner ("Sumner") and Michael Niezgoda ("Niezgoda") and allowed a number of human resources and compliance issues to go unaddressed. The actions of Sumner and Niezgoda

not only reflected the Company's general disregard for corporate compliance but also undermined Plaintiff's sales efforts.

11.     Caruso's experience confirmed that the Company had a preference for younger sales representatives because, in part, it believed they would be less likely to challenge questionable practices. Sumner stated that he would never hire a sales representative with over 10 years of experience.

12.     Caruso first raised issues about Sumner to the Company's Human Resources Department in February 2017, pointing out his inappropriate behavior including harassment of female employees and customers and a host of other issues. But the Company took no action against Sumner for almost a year and a half.

13.     Caruso and other older employees were also subjected to disparate treatment by the Company. For example, in July 2017, Niezgoda required Caruso and another older employee to prepare business plans for their sales strategies, indicating that he planned to review the business plans with them in detail. This requirement was not imposed on younger sales employees.  It quickly became clear that this requirement had no legitimate business purpose and was solely to harass Caruso and the other older employee, as Niezgoda repeatedly declined to follow through on his stated intention to review the business plans with them.

14.     In addition, Caruso repeatedly sought action from Niezgoda and from the Company's Chief Compliance Officer regarding questionable activity going on in his territory. Caruso became aware that sales representatives from the Company's Aesthetics line of business were undercutting the efforts of the therapeutic sales representatives and putting the Company's customers in a vulnerable position regarding Medicare billing for the Company's products.

15.     Caruso had discussed this issue with his customers, who thanked him for his concern and his attempts to protect them. But Caruso received no support from the Company in such efforts.

16.     The Company was well aware of these problems, as they had been discussed at Company conferences and had been brought to the Company's attention by other therapeutic sales representatives. But the Company chose to take no action, putting its own profits over the Medicare compliance of its customers and the ethical obligations its sales representatives owed to those same customers.

17.     Instead of addressing the problem or providing its sales team with guidance, management targeted older, long-term employees who refused to turn a blind eye to unethical and potentially illegal issues. And the Company took steps to pretextually terminate them.

18.     After Caruso's attempts to obtain action from Niezgoda and Katrina Church went unanswered, Caruso eventually sent an email about the issue, dated May 18, 2017, cc-ing the Company's CEO, Bob Rhatigan. But even this communication was ignored.

19.     Rather than providing Caruso with the action and guidance he was seeking, Niezgoda confronted Caruso about "going over his [Niezgoda's] head." Eventually, Niezgoda admitted that the compliance issue was an "ongoing problem" "with no real fix in site." Niezgoda just punted the issue back to Caruso, saying that it would be great if Caruso could come up with a solution on his own.

20.     Even in the last weeks and months of his time with the Company, Caruso showed his commitment and loyalty to the Company—obtaining a huge formulary win at Baylor. But the Company failed to reciprocate his loyalty.

21.     The Company's stated reason for terminating Caruso was a pretext for the real reason—its bias and discrimination against older individuals. Despite decrying the "severity" of

Caruso's alleged misconduct, the Company <u>failed to take any disciplinary action</u> against younger employees who engaged in the same alleged misconduct.

22.     Even though the Company knew that younger sales representatives had also entered orders for Xeomin, without first obtaining explicit or written authorization from their customers, it did not fire or even discipline them.  By contrast, Caruso was fired.

23.     Furthermore, Caruso's actions were not "fraudulent," as claimed by the Company. Any suggestion that Caruso's actions regarding the sale of 10 vials of Xeomin were undertaken because he wanted to increase his compensation would be incorrect because at the time of the alleged misconduct, Caruso had already hit and exceeded his quarterly target.  In fact, he had surpassed his quarterly goal by 200 vials.

24.     The falsity of the accusation that Caruso's actions were fraudulent is evident from the fact that his actions were consistent with the Company's stated values and norms of: a) committing to customers and colleagues, b) assuming positive intent, c) an obligation to engage, and d) collaborating cross functionally. By contrast, the Company's actions show an absolute absence of commitment to these values—at least with respect to its older sales personnel.

25.     Caruso's termination had nothing to do with his alleged "misconduct." Instead, it had everything to do with the Company's desire to not hire and to get rid of older employees including Caruso.

26.     On information and belief, Caruso was replaced by a younger individual or his duties were performed following his termination by a younger individual.

## VI.    FIRST CAUSE OF ACTION:  AGE DISCRIMINATION IN VIOLATION OF THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

27.    Pursuant to Texas state law, a cause of action is pled against Defendant for age discrimination in violation of TCHRA. Tex. Labor Code § 21.051 et. seq. The allegations contained in all of the paragraphs of this Action are hereby reaverred and realleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

28.    In violation of the TCHRA, Defendant discriminated against Plaintiff because of his age by, among other things, harassing him and firing him for no legitimate cause or reason, causing Plaintiff to suffer damages within the jurisdictional limits of this Court. Defendant effectuated these discriminatory acts, by and through Sumner, Niezgoda and other employees.

29.    The Company's stated reason for terminating Caruso was a pretext for the real reason—its bias and discrimination against older individuals—as demonstrated by the Company's failure to take any disciplinary action against younger employees who engaged in the same alleged misconduct as Plaintiff.

30.    Plaintiff timely filed a charge of Discrimination with the Equal Employment Opportunity Commission and the Texas Workforce Commission on April 12, 2019. Plaintiff received a Right to Sue letter relating to these charges by letter from the TWC dated January 8, 2020.

31.    Plaintiff has met all procedural prerequisites to bringing these TCHRA age claims.

## VII.    SECOND CAUSE OF ACTION:  AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

32.    Pursuant to federal law, a cause of action is pled against Merz for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 6281 *et seq.* The allegations contained in all of the paragraphs of this Action are hereby reaverred and realleged for all purposes, and incorporated herein with the same force and effect as set forth verbatim herein.

33.    In violation of the ADEA, Merz discriminated against Plaintiff because of his age in connection with compensation and the terms, conditions, and privileges of employment and

limited Plaintiff in a manner that deprived him or tended to deprive him of employment opportunities and adversely affected his status as an employee. Merz effectuated these discriminatory acts, by and through Sumner, Niezgoda and other employees. The Company's stated reason for terminating Caruso was a pretext for the real reason—its bias and discrimination against older individuals—as demonstrated by the Company's failure to take any disciplinary action against younger employees who engaged in the same alleged misconduct as Plaintiff.

34.     The Company's stated reason for terminating Caruso was a pretext for the real reason—its bias and discrimination against older individuals—as demonstrated by the Company's failure to take any disciplinary action against younger employees who engaged in the same alleged misconduct as Plaintiff.

35.     Plaintiff timely filed a charge of Discrimination with the Equal Employment Opportunity Commission and the Texas Workforce Commission on April 12, 2019. Plaintiff received a Right to Sue letter relating to these charges by letter from the EEOC dated November 4, 2019.

36.     Plaintiff has met all procedural prerequisites to bringing these ADEA age claims.

37.     Further, Plaintiff is within all applicable statutes of limitations for bringing this Action.  As a proximate result of Merz's failure to abide by its promises and representations, Plaintiff suffered damages within the jurisdictional limits of this Court.

## VIII.   <u>THIRD CAUSE OF ACTION:  VICARIOUS LIABILITY</u>

38.     Pursuant to Texas state law, a cause of action is pled against Merz for vicarious liability.  The allegations contained in all of the paragraphs of this Action are hereby reaverred and realleged, for all purposes, and incorporated herein with the same force and effect as set forth verbatim herein.

39.     At the time of the discrimination, harassment, and wrongful termination, and all times relevant to this Action, Sumner and Niezgoda, among others, were agents, servants, and employees of Merz, and at all relevant time periods were acting in the course and scope of their authority as agents, servants, and employees of Merz.  In particular:

a.  Sumner expressed a preference for younger sales representatives, in furtherance of Merz's age discrimination against Plaintiff, and to serve the purpose of Merz;

b.  Niezgoda harassed Plaintiff and another older employee by imposing additional burdens and requirements on them that had no business purpose, as part of a scheme to eliminate older employees, and to serve the purpose of Merz;

c.  Niezgoda and the Company's Chief Compliance Officer refused to assist Caruso in addressing questionable activity going on in his territory, despite being well aware of the problems, as part of a discriminatory scheme to fire Caruso based on his age, and to serve the purpose of Merz;

d.  Niezgoda and the Company's management targeted older, long-term employees who refused to turn a blind eye to unethical and potentially illegal issues, and took steps to pretextually terminate them, to serve the purpose of Merz;

e.  The time, place and manner of the activities of Sumner and Niezgoda, among others, were within Merz's authorization; and

f.  The activities of Sumner and Niezgoda, among others, were motivated by a desire to benefit Merz.

40.     Pursuant to the doctrine of respondeat superior, Merz's employees' negligent and intentional acts and omissions, as described in greater particularity above, are imputed to Merz.

41.     Each of the above-referenced acts and omissions, singly or in combination with others, constituted negligence, gross negligence, and intentional conduct which proximately caused the damages Plaintiff suffered, which are in excess of the minimum jurisdictional requirements of this Court.


## IX.     JURY DEMAND

42.     Demand is hereby made for this Court empanel a lawful jury to hear this case.

## X.   DAMAGES FOR MENTAL ANGUISH

43.     As a direct and proximate result of Defendant's actions or inactions and the willful and malicious nature of the wrongs committed against the Plaintiff, Plaintiff has suffered and will suffer past, present and future severe mental anguish, for which he pleads to recover at trial.  The damages for said mental anguish exceed the minimum jurisdictional requirements of this court.

## XI.   PUNITIVE DAMAGES

44.     As a consequence of the foregoing clear and convincing facts and the willful and malicious nature of the wrongs committed against the Plaintiff, Plaintiff is entitled to exemplary damages within the jurisdictional limits of this court.

## XII.   PUNITIVE DAMAGES – NO CAP

45.     A plaintiff who successfully prosecutes a suit by proving malice by clear and convincing evidence can recover exemplary damages under Section 41.003(a)(2) of the Texas Civil Practice and Remedies Code.  Punitive Damages are sought for the malicious discrimination, harassment, and wrongful termination perpetrated by Defendant in this case.  Accordingly, the statutory caps are inapplicable.

## XIII.   REASONABLE ATTORNEYS' AND EXPERT FEES

46.     Per Tex. Lab. Code 21.259 and the ADEA, as amended, Plaintiff seeks to recover his reasonable and necessary attorneys' fees and reasonable expert fees incurred in prosecuting each of Plaintiff's TCHRA and ADEA claims.

## XIV.   RESERVATION OF RIGHTS

47.     The right to bring additional causes of action against and to amend this lawsuit as necessary is hereby specifically reserved.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendant be cited to appear and answer this petition.  Plaintiff further requests that on final trial, the Court enter judgment for Plaintiff against Defendant, and award Plaintiff the following relief:

a.     an amount in excess of the minimum jurisdictional requirements of this Court, for compensatory damages, lost compensation and benefits to trial and following trial, liquidated damages, mental anguish damages and punitive damages;

b.     reasonable attorneys' fees and reasonable expert fees,

c.     reasonable paralegal fees,

d.     costs of court;

e.     pre- and post-judgment interest at the highest rate allowed by law;

f.     an order revoking any license enabling Defendant to do business in Texas if any judgment rendered in this case has not been satisfied within three (3) months from the date of filing said final judgment;

g.     and for such other and further relief, general or special, at law or in equity, to which Plaintiff may be justly entitled;

Respectfully submitted,

_____

**ROGGE DUNN**
Texas State Bar No. 06249500
Email: dunn@righttowork.com

**BRYAN C. COLLINS**
Texas State Bar No. 04604850
Email: collins@roggedunngroup.com

**MICAH B. CHAMBERS**
Texas State Bar No. 24100552
Email: chambers@roggedunngroup.com

**ROGGE DUNN GROUP, P.C.**
500 N. Akard Street, Suite 1900
Dallas, Texas 75201-6629
Telephone: (214) 220-3888
Facsimile: (214) 220-3833

**ATTORNEYS FOR PLAINTIFF ROBERT CARUSO**

## <u>CERTIFICATE OF SERVICE</u>

      This is to certify that a true and correct copy of the above and foregoing instrument was served on all counsel of record, pursuant to the Rules of Civil Procedure, on the _2nd__ day of June, 2020.

Dana L. Rust, Esq.
Heidi E. Siegmund, Esq.
Alexander J. Toney, Esq.
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219

    ☒ **VIA ECF**
    ☐ **VIA HAND DELIVERY**
    ☐ **VIA FIRST CLASS MAIL**
    ☐ **VIA FAX:**
    ☐ **VIA EMAIL:** drust@mcguirewoods.com
    ☐ **VIA EMAIL:** hsiegmund@mcguirewoods.com; atoney@mcguirewoods.com
    ☐ **VIA CMRRR**_____

_____

**BRYAN C. COLLINS**